UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MARKEL AMERICAN INSURANCE
COMPANY, a Corporation,

                              NO. 2:08-cv-2769 FCD GGH

      Plaintiff,

  v.                       MEMORANDUM AND ORDER

G.L. ANDERSON INSURANCE
SERVICES, INC., a California
Corporation; GARY L. ANDERSON,
an individual,

      Defendants.
_____/

----oo0oo----

This matter is before the court on defendants G.L. Anderson
Insurance Services, Inc. ("GLAIS") and Gary L. Anderson's
("Anderson")) (collectively, "defendants") motion for summary
judgment and plaintiff Markel American Insurance Company's
("Markel") cross-motion for summary judgment pursuant to Rule 56
of the Federal Rules of Civil Procedure.  For the reasons set

1  forth below,[1] defendants' motion for summary judgment is DENIED,

2  and plaintiff's motion for summary judgment is GRANTED in part

3  and DENIED in part.

**BACKGROUND**[2]

5     This case arises out of an insurance coverage dispute

6  between plaintiff and defendants.  Markel issued an Employment

7  Practices Liability Insurance Policy (the "Policy") to GLAIS,

8  effective December 30, 2007 to December 30, 2008, with limits of

9  liability of $500,000 for each claim and $1,000,000 in the

10 aggregate.  (PUF ¶ 1.)  The Policy provides, in pertinent part,

11 that Markel "will pay on behalf of the Insured all Damages which

12 the Insured shall become legally obligated to pay as a result of

13 Claims . . . by reason of any Wrongful Employment Practice."

14 (PUF ¶ 3.)  However, pursuant to Exclusion 1, the Policy does not

15 apply to any claim against the Insured based on conduct "that is

---

17    [1]    Because oral argument will not be of material
assistance, the court orders the matter submitted on the briefs.
18 E.D. Cal. L.R. 230(g).

19    [2]    Unless otherwise noted, the facts herein are
undisputed.  (See Pl.'s Reply to Defs.' Response to Pl.'s
20 Statement of Undisputed Facts ("PUF") [Docket #22], filed Apr.
16, 2010; Pl.'s Response to Defs.' Statement of Disputed Facts
21 ("PDF") [Docket #22], filed Apr. 16, 2010; Defs.' Response to
Pl.'s Separate Statement of Undisputed Facts ("DPUF") [Docket
22 #25-2], filed Apr. 16, 2010.)

23       The parties assert that certain facts are disputed
where the cited underlying evidence does not demonstrate a
24 triable issue of fact.  The court has reviewed the underlying
evidence and notes if the fact is indeed disputed.
25
          The parties also filed numerous objections and a motion
26 to strike evidence.  The court has reviewed the filings and
concludes that the evidence objected to is either irrelevant to
27 the court's determination or the objections are otherwise without
merit.  Accordingly, the objections are OVERRULED and the motion
28 to strike is DENIED.

1  committed with wanton, willful, reckless, or intentional

2  disregard of any law or laws" that form the basis of the claim.

3  (PUF ¶ 6.)  Both GLAIS and Anderson are Insureds under the

4  Policy.  (PUF ¶¶ 7-8.)

5     On January 25, 2008, Tiffany Cole ("Cole") filed an action

6  against defendants in the Sacramento Superior Court.  (PUF ¶ 9.)

7  The complaint alleged causes of action for sexual harassment and

8  discrimination in violation of the Fair Employment and Housing

9  Act ("FEHA"), California Government Code § 12940 et seq.,

10 retaliation, violation of public policy, and defamation-libel and

11 slander per se.  (PUF ¶ 11.)  GLAIS hired Cole on December 27,

12 2004, as a Marketing/Customer Service Representative.  (PDF ¶ 1.)

13 Cole alleged that during the later part of 2006, Anderson began

14 sexually harassing and discriminating against her by referring to

15 her as a "bitch" and by asking her questions relating to her

16 menstrual cycle.  (PUF ¶ 12.)  She also alleged that in 2007,

17 Anderson repeatedly called her a "whore" and a "bitch" and sent

18 email communications in which he referred to her as such.  (PUF

19 ¶¶ 13-14.)  She alleged that she asked Anderson to stop making

20 the sexually demeaning and offensive comments and that, in

21 February 2007, she threatened to quit because of the way she was

22 treated by Anderson.  (PUF ¶¶ 15-16.)  Cole asserted that in

23 response to her threat to quit, Anderson agreed to allow her to

24 work part-time on a telecommute schedule and come into the office

25 one to two days per week.  (PUF ¶ 17.)  Cole further alleged that

26 Anderson's conduct continued, even after she again asked him to

27 stop in October 2007.  (PUF ¶ 19.)  She asserted that after she

28 complained, Anderson sent out defamatory emails to clients

1 calling her "so God damned lazy, she can't get her cheesy, fat

2 fucking ass in the car and drive to work." (PUF ¶ 20.) Finally,

3 Cole alleged that Anderson retaliated against her complaints of

4 sexual harassment by firing her effective January 2008. (PUF ¶

5 22.)

6      Anderson, current employees of GLAIS, and a former employee

7 confirmed that profanity was regularly used in the office by

8 Gary, Cole, and other employees. (PUF ¶¶ 28, 38.) Anderson

9 admitted calling Cole a "bitch" and a "whore," but asserted it

10 was in the context of a joke after Cole had used those terms in

11 referring to herself. (PUF ¶ 41; PDF ¶ 38-39.) Anderson also

12 admitted that sexual slurs and jokes and racial or ethnic slurs

13 and jokes were occasionally told at the office. (PUF ¶ 43.)

14 However, no one was aware of any complaints by Cole about sexual

15 harassment. (Ex. 6  to Decl. of Clara Celebuski ("Celbuski

16 Decl."), filed Mar. 3, 2010, at 5.) When interviewed, Anderson

17 and the employees commented that plaintiff herself made sexually

18 explicit comments, sent emails that had sexual innuendos and

19 sexual jokes, and made sexual gestures in public when other

20 employees were present. (Id. at 4-5; PDF ¶¶ 36-37, 51.)

21 Anderson believed that all employees were comfortable in the

22 uninhibited environment at GLAIS because they appeared to enjoy

23 the bantering that included profanity and sexual comments. (PDF

24 ¶ 47.)

25      Anderson also admits sending the email to Dan Carroll

26 ("Carroll"), a friend of Anderson's, that referred to Cole, but

27 presents evidence that Carroll did not know to whom Anderson was

28 referring. (PUF ¶ 59; PDF ¶ 27.) The email did not mention

1  Cole's name, and she was not the only employee that worked from

2  home.  (PDF ¶ 19.)

3      Defendants contend that Cole's employment was terminated on

4  January 11, 2008 on the basis of insubordination.  Specifically,

5  they assert that she was terminated due to an email she sent to

6  all GLAIS employees stating that she would not comply with new

7  compensation procedures that GLAIS had implemented in January

8  2008.  (PUF ¶ 47; PDF ¶¶ 30-31.)

9      After Cole's complaint was filed, by letter dated January

10  29, 2008, Markel wrote a letter to Anderson acknowledging receipt

11  of the claim; the letter provided, "This letter does not address

12  applicability of coverage, which will be addressed in future

13  correspondence."  (PUF ¶ 25; Ex. 3 to Decl. of Clara Celebuski

14  ("Celbuski Decl."), filed Mar. 3, 2010.)  By letter dated January

15  31, 2008, Markel appointed Robert J. Schnack ("Schnack") of

16  Jackson Lewis LLP to defend the named defendants in the Cole

17  litigation.  (PUF ¶ 24.)

18      On February 25, 2008, Cole made a settlement demand for the

19  policy limit of $500,000, less attorneys' fees and costs

20  incurred, which expired on April 4, 2008.  (PUF ¶ 26.)  That same

21  day, Schnack filed defendants' answer to Cole's complaint, which

22  denied all of the allegations and asserted 18 affirmative

23  defenses.  (PDF ¶ 50.)

24      On February 26, 2008, Markel and Anderson received Schnack's

25  initial report relating to  the liability faced by defendants in

26  the Cole litigation.  (PUF ¶ 27; DPUF ¶ 13.)  Schnack

27  acknowledged that there were defenses to Cole's claim, but

28  recommended settlement.  (PDF ¶ 55.)  Schnack's preliminary

1 evaluation was "that this case presents some significant

2 liability exposure as to both compensatory and punitive damages."

3 (DPUF ¶ 15; Ex. 6 to Celebuski Decl. at 8.)  Specifically, the

4 report noted that "regardless of plaintiff's own conduct and

5 comments, the jury could easily believe that in 2006 and 2007

6 such conduct and comments simply should not occur in the

7 workplace."  (Ex. 6 to Celbuski Decl. at 8.)  Schnack reiterated

8 his conclusions that defendants faced significant exposure beyond

9 the policy limits in an email to Anderson sent on April 9, 2009.

10 (PUF ¶¶ 48-49.)

11     On March 26, 2008, Markel's coverage counsel, Andrew Waxler

12 ("Waxler"), sent a letter to Anderson regarding coverage related

13 to the Cole litigation.  (PUF ¶ 31; PDF ¶ 56.)  The letter

14 provided that "[b]ased upon the information received by Markel

15 thus far, Markel wishes to advise that it will defend [Anderson]

16 and GLAIS . . . under a reservation of Markel's right to disclaim

17 coverage."  (Ex. 7 to Celebuski Decl. at 1.)  The letter

18 confirmed that the policy limit for the claim was $500,000.

19 (Id.)  The letter also provided that Exclusion 1 to the Policy

20 may disallow coverage based upon willful conduct and that

21 Insurance Code § 533 also prohibits indemnification for willful

22 conduct and any punitive damage award.  (Id. at 5-6.)  The letter

23 advised that Markel reserved the right to seek reimbursement of

24 the Claim Expenses incurred in the litigation on behalf of the

25 insureds if the litigation was not covered under the Policy.

26 (Id. at 6.)  The letter also advised that, although Waxler

27 encouraged allowing Schnack to continue to act as counsel in the

28 litigation, Anderson and GLAIS were entitled to independent

6

1  counsel under California Civil Code § 2860.  (Id.)  Anderson

2  received and reviewed the letter on March 27, 2008.  (PUF ¶ 36.)

3      Schnack obtained an agreement from Cole's counsel to extend

4  the deadline for the policy limits demand from April 4, 2008, to

5  April 11, 2008.  (PUF ¶ 59.)  On April 9, 2008, Anderson informed

6  Schnack that he had an appointment with Kim Collins ("Collins")

7  of Murphy, Campbell, Guthrie & Alliston on April 10.  (PUF ¶ 51.)

8  The settlement deadline was extended until April 14, 2008.  (PUF

9  ¶ 51; PDF ¶ 65.)

10      On April 10, 2008, Anderson retained Collins as independent

11  counsel.  (PUF ¶ 37.)  That same day, Waxler received a letter

12  from Collins, demanding that the policy limits settlement be

13  accepted.  (PUF ¶ 53.)  The letter also noted that Waxler had

14  "plac[ed] pressure" on Anderson to agree to pay money of his own

15  to satisfy the demand and that he had warned Anderson of the

16  possibility of non-covered damages since approximately April 3,

17  2008, "with several follow ups."  (Ex. 16 to Decl. of Andrew J.

18  Waxler ("Waxler Decl."), filed Apr. 8, 2010, at 3.)

19      Waxler attempted to reach Collins at least three times on

20  Friday, April 11, 2008 to discuss whether defendants would

21  contribute any money to a settlement of the Cole litigation.

22  (Waxler Decl. ¶ 9.)  Waxler left messages for Collins, providing

23  a cell phone number and inviting him to call over the weekend to

24  discuss these issues prior to expiration of the policy limits

25  demand on Monday, April 14, 2008 at noon.  (Id.)  Collins never

26  called Waxler.  (Id.)

27      On April 14, 2008, Waxler called Collins and asked if

28  defendants would contribute to the settlement.  (PUF ¶ 55; D{UF ¶

7

1  30.)  Collins replied that defendants would not pay anything, but

2  reiterated defendants' demand that the case be settled.  (PUF ¶

3  56; DPUF ¶¶ 31-32.)  By letter dated and faxed April 14, 2008,

4  Waxler advised Collins that Markel had authorized acceptance of

5  the policy limits demand to settle the Cole litigation under a

6  reservation of the right to seek reimbursement of all sums paid.

7  (PUF ¶ 57; DPUF ¶ 33.)

8      Schnack accepted Cole's offer to settle the litigation for

9  the Policy limit less attorney's fees and costs before noon on

10 April 14, 2008.  (PDF ¶ 69.)  Markel paid the agreed upon amount

11 to Cole without an allocation to any of the four claims alleged

12 in the Cole litigation.  (PDF ¶ 69; DPUF ¶ 34.)

13     On November, 2008, plaintiff Markel filed its Complaint,

14 alleging claims for (1) declaratory relief regarding the duty to

15 indemnify, and (2) recoupment and/or reimbursement.

16                            **STANDARD**

17     The Federal Rules of Civil Procedure provide for summary

18 judgment where "the pleadings, the discovery and disclosure

19 materials on file, and any affidavits show that there is no

20 genuine issue as to any material fact and that the movant is

21 entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c);

22 see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).

23 The evidence must be viewed in the light most favorable to the

24 nonmoving party.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th

25 Cir. 2000) (en banc).

26     The moving party bears the initial burden of demonstrating

27 the absence of a genuine issue of fact.  See Celotex Corp. v.

28 Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to

8

1 meet this burden, "the nonmoving party has no obligation to

2 produce anything, even if the nonmoving party would have the

3 ultimate burden of persuasion at trial."  <u>Nissan Fire & Marine</u>

4 <u>Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

5 However, if the nonmoving party has the burden of proof at trial,

6 the moving party only needs to show "that there is an absence of

7 evidence to support the nonmoving party's case."  <u>Celotex Corp.</u>,

8 477 U.S. at 325.

9     Once the moving party has met its burden of proof, the

10 nonmoving party must produce evidence on which a reasonable trier

11 of fact could find in its favor viewing the record as a whole in

12 light of the evidentiary burden the law places on that party.

13 <u>See</u> <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th

14 Cir. 1995).  The nonmoving party cannot simply rest on its

15 allegations without any significant probative evidence tending to

16 support the complaint.  <u>See</u> <u>Nissan Fire & Marine</u>, 210 F.3d at

17 1107.  Instead, through admissible evidence the nonmoving party

18 "must set forth specific facts showing that there is a genuine

19 issue for trial."  Fed. R. Civ. P. 56(e).

**ANALYSIS**

21 **A.   Defendants' Motion for Summary Judgment**

22     Defendants move for summary judgment on the grounds that

23 plaintiff failed to timely notify them of a reservation of rights

24 under the policy.[3]  Specifically, defendants contend that (1)

25 Markel failed to timely and expressly notify the defendants that

26 Markel was reserving its rights under the insurance agreement;

27

28     [3]   The parties agree that California law should apply in
determining the merits of this dispute.

1 (2) Markel failed to notify defendants of its intention to accept

2 the settlement offer before the morning it accepted the offer;

3 and, (3) Markel never informed defendants that they had a right

4 to assume their own defense.

5       "An insurer has the right and broad duty to defend the

6 insured against third party claims potentially within the

7 policy's coverage." Blue Ridge Ins. Co. v. Jacobsen, 25 Cal. 4th

8 489, 497 (2001).  However, agreeing to defend the insured does

9 not obligate the insurer to pay any judgments or settlements

10 which arise out of conduct which is not covered by the insurance

11 policy.  An insurer may agree to defend a suit subject to a

12 reservation of rights.  Truck Ins. Exchange v. Super. Ct., 51

13 Cal. App. 4th 985, 994 (1996).  This permits an insurer to meet

14 "its obligation to furnish a defense without waiving its right to

15 assert coverage defenses against the insured at a later time."

16 Jacobsen, 25 Cal. 4th at 497 (citations omitted); see also Gray

17 v. Zurich Insurance Co., 65 Cal. 2d 263, 279 (1966).

18       In order for an insurer to seek reimbursement from an

19 insured for noncovered claims included in a reasonable settlement

20 payment, the insurer must satisfy three prerequisites.  Jacobsen,

21 25 Cal. 4th at 502.  These prerequisites include: "(1) a timely

22 and express reservation of rights; (2) an express notification to

23 the insureds of the insurer's intent to accept a proposed

24 settlement offer; and (3) an express offer to the insureds that

25 they may assume their own defense when the insurer and insureds

26 disagree whether to accept the proposed settlement."  Id.

27       Courts interpreting California law have held that an insurer

28 who waited as long as two years before explicitly reserving its

10

1  rights under the insurance agreement did not waive its right to

2  recovery for claims not covered under the policy.   See Ringler

3  Associates Inc. v. Maryland Cas. Co, 80 Cal. App. 4th 1165, 1189

4  (2000) ("it is insufficient for Ringler to rely on the fact

5  respondents participated in its defense for approximately two

6  years before formally reserving their rights to assert defenses

7  to coverage"); see also American Motorists Ins. Co. v. Allied-

8  Sysco Food Services, Inc., 19 Cal. App. 4th 1342, 1350 (1993),

9  *overruled on other grounds by* Buss v. Superior Ct., 16 Cal. 4th

10  35, 50 (1997) (insurer did not waive coverage defense despite

11  nine-month delay in sending reservation-of-rights letter after

12  acceptance of defense); National Union Fire Ins. Co. v. Siliconix

13  Inc., 726 F. Supp. 264, 270 (N.D. Cal. 1989) (insurer did not

14  waive coverage defense despite fifteen-month delay in reserving

15  its rights after accepting tender of defense).   However, a

16  reservation of rights made "on the eve of trial" may preclude an

17  insurer from obtaining reimbursement from the insured.   Golden

18  Eagle Ins. Co. v. Foremost Ins. Co., 20 Cal. App. 4th 1372, 1393

19  (1993).

20      Defendants have not shown that Markel failed to timely and

21  expressly notify them that Markel was reserving its rights under

22  the insurance agreement.[4]   See Jacobsen, 25 Cal. 4th at 502.

23

24      [4]   Defendants argue that Markel is precluded from
   obtaining reimbursement from them because Markel's "unconditional
25  defense" of an action brought against its insured, with knowledge
   of the ground for denial of coverage "constitutes a waiver of the
26  terms of the policy and an estoppel of the insurer to assert such
   grounds."   Stonewall Ins. Co. v. City of Palos Verdes Estates, 46
27  Cal. App. 4th 1810, 1838-39 (1996) (internal quotation marks
   omitted).   However, as evidenced by both the January 29, 2008
28                                          (continued...)

11

1 Four days after the Cole complaint was filed, Markel's first

2 communication with defendants, the January 29, 2008 letter,

3 unequivocally provided, "This letter does not address

4 applicability of coverage, which will be addressed in future

5 correspondence," and noted, "Nothing in this letter shall be

6 construed as a waiver of any of the rights which [Markel] may

7 have under this policy."  (Celbuski Decl., Ex. 3.)  As such,

8 defendants cannot meet their burden of showing that Markel

9 initiated an unconditional defense on behalf of defendants.

10 Moreover, assuming *arguendo*, that defendants were not explicitly

11 informed of the reservation of rights until they received

12 Markel's March 26, 2008 letter, sixty-one days after the filing

13 of the complaint, that explicit reservation of rights is timely.

14 See Ringler Associates Inc., 80 Cal. App. 4th at 1189 (two

15 years); Am. Motorists Ins. Co., 19 Cal. App. 4th at 1350 (nine

16 months); Nat'l Union Fire Ins. Co., 726 F. Supp. at 270 (15

17 months).

18     Defendants' contention that the reservation of rights was

19 made "on the eve of" settlement because the March 26, 2008 letter

20 was sent nine days before the initial deadline for accepting the

21 settlement and eighteen days before the final deadline is

22 unpersuasive.  As an initial matter, defendants fail to cite any

23 authority to support their contention that a settlement offer

24 deadline is parallel to the initiation of a trial.  Further,

25

26

27 [4](...continued)
letter and the March 26, 2008 letter, Markel never agreed to an
"unconditional defense" that estopped it from later seeking
28 reimbursement from defendants.

12

1  plaintiff gave defendants a general reservation of rights within

2  four days of the filing of the complaint and an express

3  reservation of rights approximately two months after the

4  litigation was filed.   While Cole's settlement demands created an

5  expedited timeline for defendants to respond, there is no

6  evidence that plaintiff failed to consistently apprise defendants

7  of the potential for noncoverage.   Indeed, in his letter to

8  Waxler, Collins noted that Waxler had warned Anderson of the

9  possibility of non-covered damages since approximately April 3,

10  2008, "with several follow ups."   Moreover, Schnack obtained two

11  extensions of Cole's settlement offer deadline after plaintiff's

12  express reservation of rights and defendants' decision to seek

13  representation by independent counsel.   As such, under the

14  circumstances in this case, defendants have not demonstrated that

15  plaintiff's reservation of rights were not made until the "eve of

16  trial."

17       Furthermore, the evidence is undisputed that plaintiff

18  expressly advised defendants of their right to independent

19  counsel in the March 26, 2008 letter, and that defendants indeed

20  retained independent counsel, Collins.   The evidence is also

21  undisputed that Collins *demanded* that plaintiff settle the claims

22  for the policy limit four days before the settlement offer

23  deadline.   After receiving this communication, Waxler attempted

24  to contact Collins numerous times in order to discuss defendants'

25  contribution to the settlement to no avail.   When Waxler finally

26  contacted Collins the day of the settlement deadline, Collins

27  again demanded that plaintiff settle the claims for the policy

28  limit.   Accordingly, because defendants hired independent counsel

13

1  after Markel's explicit notification of their right to do so and

2  because defendants demanded that Markel accept Cole's settlement

3  offer, defendants cannot demonstrate that plaintiff failed to

4  inform them of their right to assume their own defense or that

5  plaintiff failed to make an express notification of the its

6  intent to accept the settlement offer.

7       Therefore, defendants' motion for summary judgment is

8  DENIED.

9  **B.   Plaintiff's Motion for Summary Judgment**

10      Plaintiff filed a counter-motion for summary judgment,

11  asserting that there are no genuine issues of material fact as to

12  the validity of Markel's position that there is no coverage for

13  the damages sought in the Cole litigation.  Specifically,

14  plaintiff contends that defendants acted willfully and

15  intentionally disregarded California's sexual harassment and

16  antidiscrimination laws.  As such, plaintiff contends that it is

17  entitled to all sums advanced to settle the litigation.

18      An insurer bears the burden of proof in proving that a

19  statutory or policy exclusion or limitation applies to bar or

20  limit coverage under an insurance policy.  Clemmer v. Hartford

21  Ins. Co., 22 Cal. 3d 865, 879-80 (1978); see Raychem Corp. v.

22  Fed'l Ins. Co., 853 F. Supp. 1170, 1175 (N.D. Cal. 1994).

23  Exclusion 1 in the Policy precludes coverage for a claim "based

24  on conduct of the Insured or at the Insured's direction that is

25  committed with wanton, willful, reckless or intentional disregard

26  of any law or laws that is or are the foundation for the Claim."

27  Further, California Insurance Code § 533, an implied exclusionary

28  clause read into all insurance polices, bars coverage for

14

1  intentional and willful acts of the insured.  Cal. Ins. Code §

2  533 ("An insurer is not liable for the loss caused by the wilful

3  act of the insured; but he is not exonerated by the negligence of

4  the insured, or the insured's agents or others."); Downey Venture

5  v. LMI Ins. Co., 66 Cal. App. 4th 478 (1998).  The purpose of the

6  statutory exclusion is to preclude indemnification for conduct

7  that is "clearly wrongful and necessarily harmful."  Mex. Indus.,

8  Inc. v. Pac. Nat'l Ins. Co., 76 Cal. App. 4th 856 (1999).

9  Accordingly, "section 533 precludes indemnification for liability

10  arising from deliberate conduct that the insured expected or

11  intended to cause damage."  Shell Oil Co. v. Winterthur Swiss

12  Ins. Co., 12 Cal. App. 4th 715 (1993); Unified W. Grocers, Inc.

13  v. Twin City Fire Ins. Co., 457 F.3d 1106, 1112 (9th Cir. 2006)

14  ("Section 533 does not bar coverage for conduct which may be

15  wrongful, but which was not intentional or willful from the

16  standpoint of the insured.").

17      However, in determining whether an unproven claim is covered

18  by an applicable insurance policy, courts should be "reluctant to

19  frame coverage based on isolated allegations in the underlying

20  complaint."  Unified W. Grocers, Inc, 457 F.3d at 1112.  "The

21  third party complainant, who may overstate the claims against the

22  insured, should not be the arbiter of the policy's coverage."

23  Id. (quoting Gon v. First State Ins. Co., 871 F.2d 863, 869 (9th

24  Cir. 1989)).  Moreover, "[w]hen a settlement of the underlying

25  claim has been made, the question of whether the liability of the

26  insured was one which the contract of insurance covered is still

27  open and may be litigated and determined" in a subsequent action.

28  Everett Assocs., Inc. v. Transcontinental Ins. Co., 159 F. Supp.

1  2d 1196, 1209 (N.D. Cal. 2001) (citing <u>Lamb v. Belt Casualty Co.</u>,

2  3 Cal. App. 2d 624, 631-32 (1935)).[5]

3       **1.    Retaliation and Wrongful Termination in Violation of**
        **Public Policy**

4

5       Two of the claims brought in the Cole litigation, the

6  retaliation claim and the wrongful termination in violation of

7  public policy claim necessarily implicate willful and intentional

8  conduct on the part of the insured.  Specifically, Cole alleged

9  that defendants terminated her because she complained about

10 sexual harassment in the work place.  A termination affirmatively

11 undertaken with the intent to interfere with sexual

12 discrimination laws and in violation of public policy cannot be

13 the result of negligence because liability "*necessarily* involves

14 willful and intentional misconduct" based upon impermissible

15 motivation.  <u>B & E Convalescent Ctr. v. State Compensation Ins.</u>

16 <u>Fund</u>, 8 Cal. App. 4th 78, 95, 98 (1992) (emphasis in original)

17 (holding that a termination of employment for which a tort action

18 will lie is an intentional and wrongful act in which the harm is

19 inherent).  A termination in violation of FEHA or public policy

20 can "*only* be established by evidence of an employer's motive and

21 intent to violate or frustrate the law(s) declaring or

22 establishing fundamental public policy."  <u>Id.</u> at 99.

23      Accordingly, under both Exclusion 1 and § 533, defendants

24 would not be entitled to indemnification for these claims in the

25

26      [5]    Because it is irrelevant to its conclusions, the court
   does not address whether the settlement creates a presumption of
27 liability or the amount of such liability.  <u>Compare</u> <u>Lamb</u>, 3 Cal.
   App. 2d at 631 <u>with</u> <u>Isaacson v. Cal. Ins. Guarantee Ass'n</u>, 44
28 Cal. 3d 775, 793-94 (1988).

1  Cole litigation.  Therefore, plaintiff's motion for summary

2  adjudication is GRANTED with respect to any settlement money

3  attributable to payment for these claims.[6]

4          **2.    Sexual Harassment and Defamation/Slander**

5          However, the remaining claims in the Cole litigation do not

6  necessarily implicate intentional or willful conduct.  California

7  courts have acknowledged that in analyzing the applicability of

8  exclusions or § 533, the court "must not paint with too wide a

9  brush."  Uhrich v. State Farm Fire & Cas. Co., 109 Cal. App. 4th

10 598, 614 (2003); Melugin v. Zurich Canada, 50 Cal. App. 4th 658,

11 661 (1996).  "[W]here allegations are 'inseparably intertwined'

12 with noncovered intentional conduct, there is no coverage."

13 Uhrich, 109 Cal. App. 4th at 615; see Marie Y. v. Gen. Star

14 Indem. Co., 110 Cal. App. 4th 928 (2003) (allegations of

15 negligence do not give rise to the duty to indemnify where the

16 negligent conduct is "so intertwined with intentional and willful

17 wrongdoing as to be inseparable from the wrongdoing").  But,

18 "[n]either precedent nor logic dictates that an employer who

19 wrongfully terminates an employee cannot also be liable for other

20 intentional torts or for torts of negligence against the victim

21 which are apart from, and not integral to, the wrongful

22 termination."  Lesser v. State Farm Fire & Cas. Co., No. CV-95-

23 4154, 1996 WL 339854, at *8 (C.D. Cal. June 14, 1996); see

24 Unified W. Grocers, 457 F.3d at 1114 (noting that the allegations

25

26        [6]    Plaintiff has failed to set forth any evidence
   regarding what, if any, amount of the settlement can be
27 attributed to coverage of these two claims.  Accordingly, the
   court makes no finding with respect to the amount of money that
28 should be reimbursed to plaintiff.

1 of negligent conduct are not inseparably intertwined with the

2 allegations of willful conduct because the damages alleged "do

3 not unavoidably originate from intentional and willful conduct by

4 the insured").  The burden is on the insurer to demonstrate that

5 the other alleged misconduct was necessarily part of the

6 intentional wrongful conduct.  Horace Mann Ins. Co. v. Barbara

7 B., 4 Cal. 4th 1076, 1082 (1993).

8     In this case, plaintiff has failed to proffer any evidence

9 or argument that Cole's retaliation and wrongful termination

10 claims are inseparable from the harassment and defamation claims.

11 Further, other courts have found that sexual harassment claims

12 against a party that asserts the conduct was consensual or

13 welcome are not so intertwined with wrongful termination claims

14 as to necessarily bar coverage.  See Lesser, 1996 WL 339854, at

15 *7-8; David Kleis, Inc. v. Superior Court, 37 Cal. App. 4th 1035,

16 1050 (1995); see also Save Mart Supermarkets v. Underwriters at

17 Lloyd's London, 843 F. Supp. 597 (N.D. Cal. 1994); cf. State Farm

18 Fire & Cas. Co. v. Century Indem. Co., 59 Cal. App. 4th 648, 663-

19 64 (1997) (holding that failure to report was related directly

20 and solely to charges of child molestation).  Accordingly, the

21 court concludes that plaintiff has failed to demonstrate that the

22 applicability of Exclusion 1 and § 533 to Coles's retaliation and

23 wrongful termination claims extend to her harassment and

24 defamation claims.

25     Moreover, plaintiff has failed to establish that the

26 underlying harassment and defamation claims in the Cole

27 litigation were necessarily based on intentional or willful

28 conduct.  Melugin, 50 Cal. App. 4th at 666 (holding that § 533

18

1  does not bar coverage for all claims of sexual harassment and

2  discrimination because not all acts are necessarily intentional).

3  With respect to Cole's harassment claim, defendants present

4  evidence that Anderson believed the conduct at issue was welcome.

5  Specifically, Cole engaged in much of the conduct complained of

6  and referred to herself as a "bitch" and "whore" prior to

7  Anderson's use of those terms.  See Lesser, 1996 WL 339854, at

8  *7-8 (holding that sexual harassment claim was not necessarily

9  intentional where insured presented evidence that he believed the

10  relationship was consensual); David Kleis, Inc., 37 Cal. App. 4th

11  at 1050 (same); see also Quigley v. Travelers Prop. Cas. Ins.

12  Co., 630 F. Supp. 2d 1204, 1219-20 (E.D. Cal. 2009) (holding that

13  § 533 did not necessarily bar coverage where the insured did not

14  admit intentional sexual misconduct and the insurer did not

15  conclusively demonstrate intentional molestation).  With respect

16  to Cole's defamation claim, defendants present evidence that

17  Anderson did not intend for the email to identify Cole as the

18  subject of the defamatory writing.  Specifically, Anderson did

19  not identify Cole by name and the recipient of the email,

20  Carroll, asserts that he did not know which employee was referred

21  to in the email.  Accordingly, the court cannot conclude as a

22  matter of law that defendants intentionally or willfully harassed

23  or defamed Cole.

24      Plaintiff's reliance on Coit Drapery Cleaners, Inc. v.

25  Sequia Insurance Co., 14 Cal. App. 4th 1595 (1993) is misplaced,

26  as the facts before the court in that case are materially

27  distinguishable from the facts before the court in this case.  In

28  Coit Drapery, the insured and managerial employees had been found

19

1 liable for sexual harassment arising out of, inter alia, the

2 attempt to force an unwilling subordinate employee to the floor

3 for intercourse and the threat to fire that employee for refusing

4 sexual favors. Id. at 1602. The evidence demonstrated that the

5 conduct was "part of a consistent course of sexual harassment,"

6 and there were "no unresolved factual issues as to the

7 intentionality" of the conduct. Id. at 1608. Therefore, the

8 court concluded that § 533 barred coverage. However, in this

9 case, there are disputed issues of fact regarding whether the

10 underlying sexual harassment claim was based upon intentional

11 conduct. Defendants present evidence that Anderson perceived the

12 comments at issue to be welcomed by plaintiff.

13 Therefore, plaintiffs's motion for summary adjudication is

14 DENIED with respect to any settlement money attributable to

15 payment for these claims.

16 **CONCLUSION**

17 For the foregoing reasons, defendants' motion for summary

18 judgment is DENIED, and plaintiff's counter-motion for summary

19 judgment is GRANTED in part and DENIED in part.

20 IT IS SO ORDERED.

21 DATED: May 25, 2010

23 FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

20